[Cite as *State v. Pierce*, 2023-Ohio-528.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 111605 |
| JOHNNIE A. PIERCE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 23, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-642073-A and CR-20-655219-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Morgan Austin and Michael Martinez, Assistant Prosecuting Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant*.

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, Johnnie A. Pierce, appeals his convictions in two separate cases. For the reasons that follow, we affirm.

## I. Procedural and Factual Background

{¶ 2} This appeal concerns two separate incidents, indictments, and trials. Accordingly, we will discuss each case independently.

### A. Cuyahoga C.P. No. CR-19-642073-A — The bar fight

{¶ 3} In July 2019, Pierce was named in a nine-count indictment charging him with two counts each of aggravated robbery, felonious assault, and having weapons while under disability, and one count each of robbery, petty theft, and illegal possession of a firearm in a liquor permit premises. A majority of the charges also contained one- and three-year firearm specifications. These charges stemmed from a physical altercation that occurred on July 2, 2019, at the Honey Do bar.

{¶ 4} The evidence at trial proved that Pierce assaulted the victim inside the bathroom at the bar. The victim testified that Pierce struck him in the head with a gun, repeatedly punched and kicked him in the head, and robbed him of money and lottery tickets. Kenny Walls, a defense witness, corroborated the victim's testimony that Pierce assaulted the victim, but denied that a weapon was used during the assault. The victim was transported by ambulance to the hospital where he was treated for a contusion on his scalp and a laceration on his left eye.

{¶ 5} The responding police officers testified that the victim was "clearly assaulted" based on observable injuries, including bruising and lacerations to his face. The jury observed the victim's injuries and physical condition from Officer Jeffrey Valek's body-camera video, which was admitted into evidence.

{¶ 6} The trial court granted Pierce's Crim.R. 29 motion for judgment of acquittal on Count 9 — illegal possession of a firearm in a liquor permit premises. Following deliberation, the jury found Pierce guilty of Count 4, felonious assault, a second-degree felony violation of R.C. 2903.11(A)(1), but not guilty of the attendant one- and three-year firearm specifications. The jury also found Pierce not guilty of the remaining counts.

**B. Cuyahoga C.P. No. CR-20-655219-A — The Rocky River incident**

{¶ 7} In December 2020, Pierce was named in a six-count indictment charging him with three counts of assault, containing a furthermore specification that the victim in each count was a peace officer, while performing their official duties; two counts of obstructing official business, with a furthermore specification that Pierce's conduct created a risk of harm to the various officers; and one count of tampering with evidence. These charges arose from an indictment that occurred on December 10, 2020, in the Rocky River Reservation of the Cleveland Metroparks.

{¶ 8} The evidence and testimony at trial revealed that Officers Keven Huff and Patrick Elliot conducted a traffic stop after observing a vehicle cross the double yellow line on a park road. Upon approaching the vehicle, the officers observed that both the driver and the passenger, Pierce, appeared to be intoxicated. While Officer Huff questioned the driver, Officer Elliot noticed Pierce placing something in the backseat of the vehicle. The officer asked Pierce to exit the vehicle. During this interaction, Pierce became noncompliant, and additional officers were called to help detain him. Pierce continued being uncooperative and despite being tased, he

continued ignoring officers' commands. He then aggressively pulled away from the officers. In his attempt to flee, Pierce used both of his hands to push Officer Sarah Petrucci, causing her to fall onto the pavement and into the path of Officer Huff, who tripped and fell over her. Pierce ran down the embankment of the Rocky River and into the river.

{¶ 9} After a five-hour standoff in the Rocky River, where Pierce continued to evade apprehension and ignore police commands, causing additional officers to respond and navigate the waters of the Rocky River and surrounding embankment during the month of December, the police were eventually able to detain him. Dash- and body-camera videos depicting how the events unfolded were played for the jury.

{¶ 10} Officer Petrucci testified about her interactions with Pierce and described to the jury how he acted in his attempt to break away from the officers. She stated:

> Lots of flailing of the limbs just trying to pull away with his arms, legs, everything that he could. He was just — everybody that had any sort of grip on him he was pulling away from. Elbows were being thrown. Anybody that had a grip on him he broke free from.

(Tr. 807.) Officer Petrucci testified as the video showing Pierce pushing her to the ground was played for the jury. She stated that she had her "Taser pulled out and I remember him looking at me when I had my Taser out and he just shoved me to the ground." (Tr. 810.) She testified that she fell into the pathway of Officer Huff, who tripped and fell on top of her. She stated that she experienced pain as a result of the fall because she fell on her tailbone and back onto her elbows and upper arms.

Officer Petrucci stated that she suffered a bruised tailbone from the fall and additional bruising, bumps, and soreness from the subsequent apprehension of Pierce.

{¶ 11} The jury found Pierce guilty of Count 3, assault, and further found that the victim was a peace officer who was engaged in the performance of her official duties at the time of the offense, a fourth-degree felony violation of R.C. 2903.13(A); and Count 5, obstructing official business and further found that Pierce created a risk of harm to the officers, a fifth-degree felony violation of R.C. 2921.31(A); and Count 6, obstructing official business, a second-degree misdemeanor violation of R.C. 2921.31(A). The jury acquitted Pierce of the remaining charges and specifications.

## C. Sentencing Hearing

{¶ 12} The trial court sentenced Pierce for both cases on the same day. In CR-655219, the court ordered Pierce to serve 18 months on Count 3, assault of a peace officer; 12 months on Count 5, obstructing official business; and 30 days on Count 6, obstructing official business. The court ordered Pierce to serve Counts 5 and 6 concurrently but consecutively to Count 3, for a total prison term of 30 months.

{¶ 13} Over objection, the trial court sentenced Pierce in CR-642073 under the Reagan Tokes Law. For the felonious assault offense, the trial court imposed an indefinite prison term of a minimum of two years and a maximum of three years.

The trial court ordered Pierce to serve this sentence consecutively to the 30-month sentence imposed in CR-655219.

{¶ 14} Pierce now appeals, raising four assignments of error.

## II. Sufficiency of the Evidence

{¶ 15} In his first assignment of error, Pierce contends that his convictions are not supported by sufficient evidence.

{¶ 16} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Cottingham*, 8th Dist. Cuyahoga No. 109100, 2020-Ohio-4220, ¶ 32. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

### A. Felonious Assault — The bar fight

{¶ 17} Pierce does not contend that he did not engage in a physical altercation with the victim or that this was a case of mistaken identity. Rather, he challenges the victim's credibility. Although Pierce couches this argument as one of sufficiency, in actuality it is a manifest weight of the evidence challenge because Pierce asks this court to consider the victim's credibility due to his state of

intoxication in determining whether sufficient evidence supports his felonious assault conviction. This contention calls for an evaluation of the witness's credibility, which is not proper on reviewing a sufficiency-of-the-evidence claim. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 135, citing *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 200; *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. "'When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law.'" *State v. McAlpin*, Slip Opinion No. 2022-Ohio-1567, ¶ 93, quoting *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶ 18} Pierce was convicted of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(1), which provides that no person shall knowingly cause serious physical harm to another. "Serious physical harm" is any harm that involves some temporary, serious disfigurement. R.C. 2901.01(A)(5)(d). This court has found that the need for stitches constitutes serious physical harm for purposes of felonious assault. *See, e.g., State v. Finley*, 8th Dist. Cuyahoga No. 108062, 2019-Ohio-3891, ¶ 28. Even if stitches are not required for treatment, this court has found the element of "serious physical harm" satisfied with evidence of a bloody cut and a swollen eye because the injury was a temporary, serious disfigurement. *State v. Payne*, 8th Dist. Cuyahoga No. 76539, 2000 Ohio App. LEXIS 3274, 9 (July 20, 2000).

{¶ 19} In this case, the victim testified that Pierce, a person known to him, assaulted him the bathroom at the Honey Do bar. He stated that Pierce struck him the head with a gun, repeatedly punched and kicked him in the head, and robbed him of money and lottery tickets. According to the victim, he briefly lost consciousness during the altercation. The victim was transported by ambulance to the hospital, where he was diagnosed with a facial laceration, contusion on his scalp, and a laceration to his left eyelid. He underwent a CT scan, which indicated there were no fractures to his face. The victim testified that he received "seven to eight stitches to his eye," and a scar from his injury remains. His medical records, which were admitted into evidence, indicated that the laceration to his eye was "closed by plastics."

{¶ 20} Walls testified that he observed the victim "getting his butt whooped" by Pierce in the bathroom. He said that he had to pull Pierce off of the victim. Walls testified that the victim was "bleeding so badly, blood everywhere," that they called for an ambulance. And the responding police officers testified that the victim was "clearly assaulted" based on his observable injuries, including bruising and lacerations to his face. The jury observed the victim's injuries and physical condition from Officer Valek's body-camera video.

{¶ 21} Viewing the evidence in the light most favorable to the state, we find that sufficient evidence was presented to support Pierce's felonious assault conviction. The evidence is undisputed that Pierce physically assaulted the victim,

causing bruising and serious injury to the victim's face and scalp, including a laceration to the victim's left eye, that required medical treatment.

### B. Assault of a Police Officer — The Rocky River incident

{¶ 22} Although Pierce was convicted of three offenses in this case, he only challenges the sufficiency of the evidence as it relates to Count 3 — the assault on a police officer offense.

{¶ 23} R.C. 2903.13(A) provides that no person shall knowingly cause or attempt to cause physical harm to another, who is a peace officer while in the performance of their official duties.

{¶ 24} Pursuant to R.C. 2901.22(B), "a person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." "Accordingly, assault does not require that a defendant intend to cause physical harm, but 'only requires that the defendant acted with awareness that the conduct probably will cause such harm.'" *State v. Lucas*, 11th Dist. Lake No. 2020-L-118, 2021-Ohio-2721, ¶ 21, quoting *State v. Skjold*, 11th Dist. Geauga No. 2003-G-2544, 2004-Ohio-5311, ¶ 24; *see also State v. Lloyd*, 8th Dist. Cuyahoga No. 109128, 2021-Ohio-1808, ¶ 51 (is only necessary that the result is within the natural and logical scope of risk created by the conduct).

{¶ 25} Pierce contends that he did not act "knowingly" because the physical contact between him and Officer Petrucci was incidental to his efforts to evade from

the officers; not in an effort to cause or attempt to cause the officer harm. We disagree.

{¶ 26} "Incidental and accidental conduct cannot support a conviction for knowingly causing or attempting to cause physical harm." *In re S.C.W.*, 9th Dist. Summit No. 25421, 2011-Ohio-3193, ¶ 23. However, this court has found that "flailing" to evade arrest is sufficient to support a conviction for knowingly causing harm or attempting to cause harm. *State v. Jones*, 8th Dist. Cuyahoga No. 81112, 2003-Ohio-3004, ¶ 57; *see also State v. Munoz*, 10th Dist. Franklin No. 12AP-299, 2013-Ohio-4987, ¶ 12 (it was probable that the defendant flailing his arms while in close proximity to another, would strike the other); *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132 (evidence that officer was kicked by defendant's flailing foot during arrest was sufficient to support assault conviction).

{¶ 27} Viewing the evidence in favor of the state, we find that sufficient evidence was presented that Pierce acted knowingly when he placed two hands onto Officer Petrucci and shoved her, causing her to fall to the ground. The officer's testimony and the video showed that Pierce's conduct was not merely incidental but deliberate in his attempt to flee from police. Even if we view his conduct as "flailing" and not a more purposeful movement, the evidence is still sufficient to support his assault on a peace officer conviction.

{¶ 28} Accordingly, Pierce's first assignment of error challenging his convictions in both cases is overruled.

### III. Manifest Weight of the Evidence

{¶ 29} The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, quoting *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, at paragraph two of the syllabus.  In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Riedel*, 2017-Ohio-8865, 100 N.E.3d 1155, ¶ 91 (8th Dist.).

{¶ 30} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." *Eastley* at ¶ 12, quoting *Thompkins* at 387.  In a manifest weight analysis, the reviewing court sits as a "thirteenth juror," and reviews "'the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins* at 386.

**{¶ 31}** Pierce contends in his second assignment of error that his convictions are against the manifest weight of the evidence.

### A. Felonious Assault — The bar fight

**{¶ 32}** Pierce raises the same argument that he asserted in his sufficiency of the evidence challenge — that the victim's state of intoxication during the incident prevented him from "mak[ing] an accurate observation, form[ing] a memory of that event, and [the ability] to recount that recollection at a later time." According to Pierce, the victim's testimony was therefore incredible and unreliable. We disagree.

**{¶ 33}** Even accounting for the victim's intoxication during the altercation and discrediting his testimony, there is no dispute that Pierce physically assaulted the victim. Pierce's own witness testified that he had to "pull" Pierce off of the victim, who was "getting his butt whooped." Wells testified that the victim was bleeding so badly that an ambulance was called.

**{¶ 34}** Pierce appears to take issue with the allegation that he used a weapon during the assault. Whether Pierce assaulted the victim with a weapon is irrelevant because Pierce was not convicted of felonious assault involving a firearm — he was acquitted of that charge and any associated specifications involving a firearm. Accordingly, it is clear that the jury did not believe beyond a reasonable doubt that Pierce used a weapon during the assault. The lack of weapon, however, does not invalidate his felonious assault conviction under R.C. 2929.03(A)(1) because it only required the state to prove that Pierce knowingly caused the victim serious physical

harm. The weight of the evidence reveals that this is not the exceptional case where the jury clearly lost its way and a new trial must be ordered.

**B. The Rocky River incident**

{¶ 35} Pierce also raises the same argument that he asserted in his sufficiency of the evidence challenge — that he did not intend to cause any harm to any of the officers but that his intention was merely to avoid apprehension and harm to himself. He contends that Officer Petrucci's testimony supports his claim because she commented on his strength and ability to pull away from the officers' grips and break free, which according to Pierce, indicates that his intention was only to evade police, not cause anyone harm. We disagree.

{¶ 36} For the reasons previously stated in addressing his sufficiency challenge, we also find that Pierce's assault-on-police officer conviction is not against the manifest weight of the evidence. The evidence demonstrates that Pierce purposely pushed Officer Petrucci to the ground as he was attempting to flee and evade detention. Additionally, his flailing and struggle with the other officers during his attempts supports his conviction for obstruction in Count 5. The contact he made with the officers was not incidental but deliberate. Moreover, the harm he created to himself and the officers by fleeing and entering the frigid waters of the Rocky River in December in an effort to avoid apprehension supports his conviction for obstruction of official business, as charged in Count 6. Accordingly, this is not the exceptional case where the jury clearly lost its way and a new trial must be ordered.

{¶ 37} Pierce's second assignment of error is overruled.

## IV. Maximum and Consecutive Sentences

{¶ 38} In his third assignment of error, Pierce contends that the trial court erred when it imposed the maximum sentence without support in the record and by ordering the sentences to be served consecutively. He contends that the sentences are not supported by the record because he did not intend to cause anyone harm but only tried to evade police and avoid harm to himself. From his argument, he makes no challenge under this assignment of error to the individual sentence imposed in CR-642073, felonious assault. Therefore, that individual sentence will not be addressed.

{¶ 39} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that the record does not support the sentencing court's findings as required by certain sentencing statutes, or the sentence is "otherwise contrary to law." *See also State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 34; *State v. Bryant*, Slip Opinion No. 2022-Ohio-1878, ¶ 22; *State v. Brunson*, Slip Opinion No. 2022-Ohio-4299, ¶ 69.

{¶ 40} "A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony

sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12." *State v. Seith*, 8th Dist. Cuyahoga No. 104510, 2016-Ohio-8302, ¶ 12, citing *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 10, 16; *see also State v. Pate*, 8th Dist. Cuyahoga No. 109758, 2021-Ohio-1089, ¶ 3 (a court's imposition of any prison term, even a maximum term, for a felony conviction is not contrary to law if the sentence is within the statutory range for the offense and the trial court considers R.C. 2929.11 and 2929.12).

{¶ 41} R.C. 2929.11 and 2929.12 are not fact-finding statutes and although the trial court must "consider" the factors, it is not required to make specific findings on the record regarding its consideration of those factors. *Pate* at ¶ 6. Indeed, consideration of the factors is presumed unless the defendant affirmatively shows otherwise. *Id.*, citing *State v. Wright*, 2018-Ohio-965, 108 N.E.3d 1109, ¶ 16 (8th Dist.). Further, a trial court's statement in its sentencing journal entry that it considered the required statutory factors is enough to fulfill its obligations under R.C. 2929.11 and 2929.12. *State v. Sutton*, 8th Dist. Cuyahoga Nos. 102300 and 102302, 2015-Ohio-4074, ¶ 72; *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 9.[1]

{¶ 42} In CR-655219, Pierce was sentenced to 18 months' incarceration for assault of a police officer, a fourth-degree felony violation of R.C. 2903.13; 12

---

[1] The Ohio Supreme Court recently accepted this issue for review. *See 01/17/2023 Case Announcements*, 2023-Ohio-86, accepting *State v. Fraley*, Case No. 2022-1281. (Proposition of Law IV: Meaningful appellate review of a sentence under R.C. 2953.08 should be permitted.).

months' incarceration for obstructing official business, in violation of R.C. 2921.31, a fifth-degree felony; and 30 days in jail for obstructing official business, a second-degree misdemeanor violation of R.C. 2921.31. These sentences are within the statutory range for these offenses. *See* R.C. 2929.14(A) and 2929.24(A).

{¶ 43} Additionally, the journal entry in this case states that "[t]he court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11." The court's statement is sufficient to find that the court considered R.C. 2929.11 and 2929.12 when sentencing Pierce, and he has not demonstrated otherwise. Further, the record reflects that the trial court considered the purposes and principles of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12 when sentencing Pierce. Both Pierce and his counsel had an opportunity to address the court prior to sentencing and make arguments regarding mitigation. The trial court also obtained a PSI for Pierce and noted his significant criminal history, including prior assaults and escapes. Pierce's argument that the trial court failed to consider R.C. 2929.11 and 2929.12 is without merit. Accordingly, the trial court's imposition of the maximum terms for in CR-655219 on Counts 3 and 5 are not contrary to law.

{¶ 44} Pierce also contends that the trial court erred in imposing consecutive sentences. He does not challenge the individual findings under R.C. 2929.14(C) or that the trial court failed to make the necessary statutory findings; he contends that the record does not support the findings.

{¶ 45} Consecutive sentences may be imposed only if the trial court makes the required findings pursuant to R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20-22. Under the statute, consecutive sentences may be imposed if the trial court finds that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following applies:

(1) The offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under post-release control for a prior offense;

(2) At least two of the multiple offenses were committed as part of one or more courses of the conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or

(3) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 46} To impose consecutive terms of imprisonment, a trial court must both make the statutory findings mandated for consecutive sentences under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate those findings into its sentencing entry. *Bonnell* at the syllabus.

{¶ 47} We find that the trial court made the requisite findings prior to imposing consecutive sentences — a challenge not disputed by Pierce. Under the law as it currently stands, courts do not have to state their factual findings or

reasoning for imposing consecutive sentences. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.[2]

{¶ 48} Even though not required to do so, the trial court found that Pierce committed the Rocky River incident offenses while on bond for the bar fight. The court determined that consecutive sentences were necessary to protect the public because both events occurred in public places that involved causing harm. As such, the court found that consecutive sentences were not disproportionate to the seriousness of the Pierce's conduct and to the danger he poses to the public because of his history of criminal conduct that involved prior escapes and assault. The court also noted that the Rocky River offenses were committed as part of one or more courses of conduct, and the harm caused was so great or unusual that no single prison term would adequately reflect the seriousness of the offense because his attempt to escape into the Rocky River required "that whole police department" and "whole section of Cuyahoga County off-line" (tr. 1230) due to the amount of personnel required to respond and the amount of area the Metropark covers.

---

[2] The Ohio Supreme Court recently accepted this issue for review. *See 01/17/2023 Case Announcements*, 2023-Ohio-86, accepting *State v. Fraley*, Case No. 2022-1281. (Proposition of Law II: Before imposing consecutive sentences, it should no longer be sufficient to only recite statutory language into the record. The trial court should be required to make actual factual findings that can be appropriately reviewed by the appellate courts.).

Accordingly, we can discern from the record that the trial court made the findings required by R.C. 2929.14(C)(4) to impose consecutive sentences.

{¶ 49} Pierce's third assignment of error is overruled.

## V. Reagan Tokes Law

{¶ 50} In his fourth assignment of error, Pierce contends that the trial court erred when it sentenced him to an indefinite sentence under the Reagan Tokes Law because the law violates constitutional guarantees of both substantive and procedural due process, the separation-of-powers doctrine, and the right to trial by jury. Most of the challenges Pierce advances against the constitutional validity of the Reagan Tokes Law — due process, the separation of powers, and the right to trial by jury — have been overruled by this district's en banc holding in *State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.). *Id.* at ¶ 17-51.[3] Accordingly, we summarily overrule those challenges under the authority of *Delvallie*.

{¶ 51} Regarding his substantive due process claim, Pierce first contends that the indeterminate sentencing scheme violates substantive due process because it fails to provide the defendant with adequate notice of what conduct can enable the ODRC to keep the defendant in prison beyond the presumptive minimum.[4] He next

---

[3] Regarding due process, *Delvallie* found the Reagan Tokes Law constitutional as it relates to R.C. 2967.271(C) and (D)'s silence with respect to setting all constitutional rights guaranteed by trial. *See Delvallie* at ¶ 48-51.

[4] The Ohio Supreme Court recently accepted this issue for review. *See 01/31/2023 Case Announcements*, 2023-Ohio-212, accepting *State v. Bryant*, Case No. 2022-1455. (Proposition of Law IV: The Reagan Tokes sentencing law violates due process by failing to provide the offender with adequate notice of what conduct exposes them to prison time beyond the minimum term and/or because it allows the Ohio Department of

contends that the indeterminate sentencing scheme violates substantive due process because it sets inadequate parameters on the Executive Branch's discretion by allowing the ODRC to keep a defendant in prison beyond the presumptive minimum sentence on the basis of prison housing and classification decisions that need not be the result of any misconduct by the defendant while in prison. Although not argued separately, Pierce merely cites to case law supporting the proposition that "arbitrary and discriminatory enforcement renders the ordinance unconstitutionally void for vagueness."

{¶ 52} We recognize that *Delvallie* did not identify or address substantive due process or void-for-vagueness as independent due process challenges to the indefinite sentencing scheme under the Reagan Tokes Law.[5] Granted, although *Delvallie* made a general statement that the law did not violate "due process," we are cognizant that a party can also challenge the constitutional validity of a law as violating due process by asserting that it violates substantive due process, or that it is void for vagueness.

{¶ 53} Although Pierce separated the concept of due process into both substantive and procedural, the brief and vague arguments he raises in support of his "substantive" due process claims are insufficient to withstand his burden to

---

Rehabilitation and Correction (ODRC) to impose prison time beyond the minimum term-based classification decisions unrelated [to] the offender's misconduct in prison.)

[5] The First District has held that the Reagan Tokes Law does not violate a defendant's substantive due process rights. *State v. Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, ¶ 32-37.

establish beyond a reasonable doubt that the Reagan Tokes Law is unconstitutional on this basis. *Delvallie* at ¶ 18, citing *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12.

{¶ 54} Nevertheless, Pierce's general claims were raised and rejected by this court in *State v. Wilburn*, 2021-Ohio-578, 168 N.E.3d 873 (8th Dist.), and *State v. Simmons*, 2021-Ohio-939, 169 N.E.3d 728 (8th Dist.), when addressing whether the Reagan Tokes Law violates the general concept of due process. *See Wilburn*, ¶ 28-36; and *Simmons*, ¶ 16-21 (recognizing that the ODRC does not have unfettered discretion under the Revised Code and that the Ohio Admin. Code provides inmates with adequate notice of the conduct that will lead to rule infractions or restrictive housing assignments, factors that trigger the ODRC to extend an inmate's minimum term of incarceration).[6] Pierce has not made any additional "substantive" due process arguments beyond those raised in *Wilburn* and *Simmons*, nor has he explained why the decisions in those cases do not apply. Accordingly, we also summarily reject his "substantive" due process arguments under the authority of *Wilburn* and *Simmons*.

{¶ 55} Pierce's fourth assignment of error is overruled.

{¶ 56} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

---

[6] *Delvallie* reaffirmed both *Wilburn* and *Simmons*. *Id*. at ¶ 17.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
LISA B. FORBES, J., CONCUR

N.B. Judge Lisa B. Forbes is constrained to apply *Delvallie*. For a full explanation, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 536 (8th Dist.) (Forbes, J., dissenting).